UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE
PORTLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 2:17-cr-00117-NT |
| | ) | |
| v. | ) | |
| | ) | |
| MST MINERALIEN SCHIFFAHRT SPEDITION UND TRANSPORT GMBH, et al., | ) ) ) ) | |

### DEFENDANTS' MOTION TO QUASH GOVERNMENT'S APPLICATION FOR "GROUND RULES," WITH INCORPORATED OPPOSITION, AND <u>MOTION TO COMPEL COMPLETE DISCLOSURES</u>

**COME NOW,** Defendants MST MINERALIEN SCHIFFAHRT SPEDITION UND TRANSPORT GMBH ("MST") and REEDEREI MS MARGUERITA GMBH & CO. GESCHLOSSENE INVESTMENT-KG ("Reederei") (collectively "Movants" or "Defendants") by and through undersigned counsel, who hereby files this Motion to Quash Government's Application for "Ground Rules," with Incorporated Opposition, and Cross-Motion to Compel Complete Disclosures by the government. In support thereof, Movants respectfully show as follows:

By way of an awkward and unprecedented application, the government requests the Court to issue an order setting "ground rules" for depositions which have not yet been noticed and for which the government has been unable (or unwilling) to confirm. *See* Doc. 7. This matter finds its genesis, (and comes before the Court), as a result of the government's misguided decision to unlawfully detain and subsequently arrest (apparently as material witnesses) several foreign seafarers who arrived in Maine onboard a Liberian flagged commercial vessel, the M/V

1

MARGUERITA, on or about July 7, 2017. Of interest, these individuals are best described as "cooperating witnesses." Each have met voluntarily with the prosecutors and/or voluntarily appeared before the grand jury. Perhaps unsurprising, the Vessel was similarly interfered with and unreasonably detained and delayed until such time that an extraordinary ransom was jointly and severally provided and other unconscionable terms were forcibly imposed upon Movants. A copy of the document misleadingly, yet self-servingly, titled by the government as an "Agreement on Security" is attached as **Exhibit 1**. Much like the individuals, Movants (*i.e.* – Owner and Manager of the Vessel) have been both cooperative and forthcoming in all dealings with interested authorities and third parties.

Long before arrival in Portland, Mr. Hornoff, an individual who was serving onboard the Vessel, (but now finds himself detained against his will in Maine for nearly two (2) months), utilized well-publicized internal reporting procedures to advise shoreside management of his discovery of suspected misconduct at sea. Upon receipt of the Hornoff report, Movants promptly launched an investigation of the previously unknown and prohibited conduct; notified the Vessel's Flag State Administration;[1] sought expert assistance to investigate the matter; and a corrective entry was made in the Vessel's Oil Record Book ("ORB") to alert all port state examiners of the issue.[2] Attached as **Exhibit 2** is a copy of the clear and comprehensive corrective entry and notification from the Vessel's ORB made once the suspected misconduct was discovered. Between the time of the receipt of Hornoff's report and arrival at Portland, experts at Compliance

---

[1] The flag state of a commercial vessel is the sovereign under whose laws the vessel is registered or licensed and is tasked with certifying a ship's compliance with international standards. *See, e.g., United States v. Abrogar*, 459 F.3d 430, 432 (3d Cir. Aug. 18, 2006); *European-Am. Banking Corp. v. M/S Rosaria*, 486 F. Supp. 245, 254 (S.D. Miss. 1978).

[2] The alleged crime in this case is the "knowing failure to maintain an accurate oil record book while in U.S. waters." *See* Indictment, DE 1. Notably, no crime has been charged for the Vessel's most recent arrival at Portland.

Systems Inc. were engaged to conduct an unannounced shipboard investigation and environmental compliance audit. They did so at Vila do Conde, Brazil. These efforts were additional to those undertaken in connection with the Liberian Flag Administration's investigation.

While actively participating in the Flag Administration's investigation, a report was also provided to various officials from the U.S. Department of Justice and U.S. Coast Guard well in advance of the Vessel's future arrival in Portland. Of interest, the report to U.S. port state[3] representatives was provided pursuant to the Coast Guard's voluntary reporting protocol found at the U.S. Coast Guard Maritime Law Enforcement Manual (MLEM), Appendix V. In sum and substance, voluntary reports to U.S. port state representatives are encouraged by the promise of immunity, as the stated goal of the self-reporting program is "If a regulated entity establishes that it satisfies conditions of the Disclosure Policy, the Coast Guard will not recommend to the U.S. Department of Justice or other prosecuting authority that criminal charges be brought against the disclosing entity. . ." MLEM, Appendix V.4.

Notwithstanding Movants prompt action and remedial measures, (as well as Movants' affirmative, transparent, and cooperative approach with all interested parties), no question or comment (or even a simple acknowledgment) was received from anyone acting for or on behalf of the United States. Instead, a well-coordinated commando-like raid, staffed with no less than thirteen (13) federal agents including specialized criminal investigators,[4] was lying in wait at the Portland dock with the sole purpose of searching for evidence of a crime and commandeering a pirate's booty from Movants. Parenthetically, the evidence in this case will show, *inter alia*, that

---

[3] Port state control is an internationally agreed regime for the inspection of foreign ships while in the ports of other countries. *Abrogar*, 459 F.3d 430, 432 (3d Cir. Aug. 18, 2006).

[4] The U.S. Coast Guard Investigative Service ("CGIS") "is a federal law enforcement agency whose law enforcement authority is derived from Title 14 of the United States Code. This authority provides for Coast Guard special agents to conduct investigations of actual, alleged or suspected criminal activity; carry firearms; execute and serve warrants; and make arrests." www.uscg.mil/hq/cg2/cgis/ last accessed September 1, 2017.

this raid was performed with the knowledge and consent (and likely with direction and guidance) of the prosecutors. Any claim by the government that the boarding was merely an administrative action by the Coast Guard should not be well received. The true nature of the boarding will surely be the subject of significant pretrial litigation, including but not limited to, motions to dismiss and motions to suppress.

Since the very inception of this matter, the government, by and through various actors, has persistently sought to "game the system" and implement an improper and legally unjustifiable brand of "rough justice." For the reasons more fully set forth herein, Movants respectfully submit that the government's motion should be denied as:

1. There is no dispute that the depositions should proceed under the "Federal Rules." Of course, the Federal Rules of Criminal Procedure directs the parties to proceed in accordance with the Federal Rules of Civil Procedure (all of which being known, understood, and affirmatively acknowledged by government counsel). *See* **Exhibit 3**;

2. The depositions will be admissible at trial in this matter (and other proceedings by and between the parties), if and only if, *inter alia*, the witnesses are unavailable at the time of trial. *See* Fed. R. Crim. P. Rule 15(f);

3. The remainder of the demands by the prosecutors seek to gain improper tactical advantages and limit the Defendants' ability to obtain the witnesses' testimony or otherwise are nonsensical or moot.

In addition, due to a lack of action by the government, Movants must now necessarily request that the government be compelled to produce via electronic means <u>all</u> of its mandatory and requested disclosures, as set out in Movants' initial and supplemental discovery demands[5] no later

---

[5] The August 28, 2017 demands are attached hereto as **Exhibit 4** and the August 31, 2017 demands are attached hereto as **Exhibit 5**.

than 12:00 noon on Monday, September 4, 2017, *i.e.* seven (7) days before the government has stated an intention to begin depositions.

## I. THE DEPOSITIONS ARE BEING CONDUCTED PURSUANT TO FEDERAL RULES.

On August 24, 2017, Magistrate Judge Rich ordered the depositions of Messrs. Peter Demcak, Damir Kordic, Jaroslav Hornof, and Lukas Zak to proceed within thirty (30) days. The Federal Rules of Criminal Procedure provide that depositions are to proceed in the same manner as a deposition in a civil action. *See* Fed. R. Crim. P. 15(e). Rule 15 further addresses objections: "a party objecting to deposition testimony or evidence must state grounds for the objection during the deposition." Fed. R. Crim. P. 15(g). Simply put, the governments' motion asks for relief which is superfluous and moot in light of the "Federal Rules." No further guidance or limitation is needed or appropriate at this time.

## II. THE PURPOSE OF THE DEPOSITIONS IS TO PRESERVE THE TESTIMONY OF THE WITNESSES.

The purpose of deposing these four (4) remaining foreign seafarers prior to their departure from the jurisdiction is to preserve their testimony for use in future proceedings should they later become unavailable. The government lawyers prematurely but purposefully seek to limit the potential use of the depositions transcripts and videos; namely, because the government recognizes good cause exists to be concerned that one (1) or both of the Movants will later pursue a civil claim for damages arising from the unreasonable delay and detention of the Vessel (and her crew). 33 U.S.C. § 1904(h). The Fourth Circuit Court of Appeals has recognized the express statutory "after-the-fact" remedy available to Movants, as set forth in 33 U.S.C. § 1904(h). *See also*, *Angelex Ltd. v. United States*, 723 F.3d 500 (4th Cir. 2013) (holding that a vessel's interests have a statutory entitlement to seek compensation for unreasonable delay and detention of the vessel by U.S.

authorities). Of course, several crewmembers have already commenced litigation against the government, and upon information and belief, additional claims for money damages are likely to follow. In short, the question of 'admissibility' and/or collateral use of the testimony to be obtained at the upcoming depositions is not presently before this Honorable Court and is something properly to be reserved until a party seeks to introduce the testimony in a future proceeding, if at all.

### III. DEFENDANTS ARE ENTITLED TO BOTH ROBUST CROSS-EXAMINATION AND DIRECT EXAMINATIONS OF THE WITNESSES.

The government unfairly seeks to obtain a tactical advantage in its confusingly proposed procedure for examining the witnesses. According to the government's filing made yesterday, Thursday, August 31, 2017, at 4:43 p.m., the government asks the Court to limit Movants to a single "cross-exam" of the witnesses.[6] A mere few hours earlier, the government recognized Movants should have at least two (2) opportunities to question the witnesses. *See* **Exhibit 3**; p. 2, government e-mail of August 31, 2017 at 12:29 p.m. Movants respectfully submit that the government's "lunchtime recognition" of Movants' right to a complete examination is telling. Simply put, Movants would be entitled to cross-examination and re-cross, and would also be entitled to recall the witnesses in the defense case-in-chief at trial. At a minimum, Movants should not be limited to a single opportunity to examine the witnesses through a cross-examination that may be unfairly limited in scope by prosecutorial tactics. An equal opportunity to examine the witnesses is appropriate and the fairest way to proceed.

---

[6] A few hours earlier, following a series of exchanges, the "schedule" proposed by the government expressly provided for both a "direct" and "re-cross" by Movants. *See* **Exhibit 2**, p. 2.

6

## IV. LOCATION OF DEPOSITIONS

The government has unilaterally demanded that the depositions proceed at an unknown and unspecified place somewhere in the Federal Courthouse in Portland. In contrast, the witnesses, through their chosen counsel (Attorney Ed MacColl), have stated that they will be available for examination at the Thompson MacColl office.[7] Noting the government's desire to work beyond a daily 5:00 pm cutoff, coupled with the undersigned lead counsel's personal hardship and desire to return as promptly as possible to his home and family in Houston, it is respectfully submitted that it makes most sense for the depositions to proceed at the law offices of Thompson MacColl, so that the depositions may continue as late in the evening as may be agreed by the parties and the witness(es). This is, of course, consistent with the witnesses' desire to complete their depositions soonest and obtain the return of their passports, which were confiscated by government agents and last known to be in the government's possession.

## V. THE GOVERNMENT'S MOTION HAS NOT BEEN BROUGHT IN GOOD FAITH

Counsel for the government has conferred extensively with counsel for the Movants; was aware of Movants' position and helpful suggestions (some of which seemingly being agreed by the government); yet has failed to honor the apparent agreements and/or advise the Court of same. *See* **Exhibit 3**.

## VI. COMPLETE AND IMMEDIATE DISCLOSURE BY THE GOVERNMENT IS NECESSARY TO ENSURE MOVANTS A FUNDAMENTALLY FAIR OPPORTUNITY TO EXAMINE THE WITNESSES

The government has known about the Court's directive to complete depositions within thirty (30) days since at least August 24, 2017. The crewmembers desire and request for

---

[7] Thompson MacColl's office is located at 120 Exchange Street, 6th Floor, Portland, Maine, 04112-0447. Attorney MacColl has informed all counsel that very pleasant conference facilities and private "break-out" rooms will be made available to the parties.

depositions has been known to the government for much longer.  To date, the government has not provided a single piece of paper or information required under governing rules and/or controlling case law and precedent.  Instead, the government has indicated that "a bulk of the materials" (whatever that may mean), may be sent via courier for weekend delivery. Parenthetically, and as alluded above, Attorney Chalos is presently in Houston and battling the aftermath of Hurricane Harvey.  Neither mail nor courier service is operating regularly and neither reasonably can be relied upon to complete delivery during the course of the holiday weekend or any time thereafter.  To assist in resolving this practical issue, counsel has requested a duplicate set of materials be sent to Chalos & Co's office in Oyster Bay, New York.  Of course, an electronic copy easily could be provided through any number of file sharing programs.  Indeed, Movants have produced approximately 50,000 pages of documents to the government precisely in this manner.  Notably, the government has not offered to reciprocate in kind.  Instead, it seemingly plans to move on the proverbial "slow boat" and courier a disk containing the electronically saved documents for arrival at some future unspecified date/time. It is respectfully requested that the government be directed to make a full and complete production via electronic means no later than 12:00 noon, Monday, September 4th, *i.e.* - seven (7) days prior to the start of the depositions.

### VII. THE REMAINDER OF THE GOVERNMENT'S APPLICATION IS EITHER MOOT OR WITHOUT MERIT.

The government presents several makeweight demands which are either moot or nonsensical.  Several are both.  For example, the government asks for an order directing that "the witnesses shall not be harassed."  *See* Doc. 7, p. 2.  Hopefully, counsel for the government will not need any such instruction or admonishment.[8]  Undersigned counsel surely does not.  In

---

[8] Prosecutors from DOJ's Environmental Crimes Section have been previously admonished by Judge Singal for brazen "chest beating" through inflammatory press releases in a prior unrelated, but similar matter.  Apparently, this branch of the DOJ "didn't get the message" or perhaps has forgot.  In this case, a sloppily drafted, yet hastily broadcasted

addition, Movants have little doubt that Attorney MacColl would not allow any of his clients to be "harassed" under any circumstance and would seek appropriate judicial intervention in the unlikely event that it may become necessary.

Similarly, and despite its own failure to make *any* disclosure, the government asks the court to Order the parties to "exchange any exhibits and/or exhibit lists that are intended to be used at the deposition sufficiently in advance to prepare for the depositions." *Id.* Without knowing the substance of the testimony to be sought by the government and/or the exhibits to be used by the prosecutors, it is both unfair and impossible for the Movants to meaningfully identify what, if any, exhibits will be used at the upcoming depositions. At present, it is unknown what topic (or topics) Movants may wish to question and/or whether Movants will ask any questions at all. Notwithstanding, Movants have every expectation that the government lawyers have <u>all</u> of their exhibits (both for the depositions and trial) marked and ready to go and either will pursue an 11th hour ambush by identifying a mountainous "*haystack*" of potential exhibits or equally as bad, will purposefully provide minimal exhibits and/or incomplete disclosure in advance of the depositions. This Court should not tolerate this and/or any other gamesmanship by the government.

### VIII. MISCELLANEOUS

Movants' lead counsel, Attorney Chalos, has participated in many depositions of foreign seafarers in similar matters, including a similar matter before this Honorable Court captioned *United States v. Lemissoler Shipmanagement*, 1:10-mj-86-JHR (2010). In that matter, depositions of six (6) foreign seafarers were conducted in conference rooms both at the Thompson MacColl office and the U.S. Attorneys' office. *Id.*, *see also In re Grand Jury Proceedings*, 2010 U.S. Dist.

---

press release was published before the Indictment was even made available to Movants. See https://www.justice.gov/opa/pr/german-ship-management-company-andcorporate-vessel-owner-indicted-falsification-pollution. Last accessed September 1, 2017.

LEXIS 144359 (D. Me. April 16, 2010). Those depositions proceeded congenially, collegially, and perhaps unsurprisingly, efficiently and effectively. There was no need for "ground rules" and unlike here, there was no attempt by the government to impede the defendant's ability to memorialize the full universe of the knowledge and testimony of the deponents. Again, the government's gamesmanship in this matter should not be well received or tolerated.

In conclusion, we share the following interesting fact. To date, there have been precisely three (3) similar MARPOL/APPS cases pursued in the District of Maine. Chalos & Co (or its predecessor firm) have been involved in every single one.[9] Indeed, at the conclusion of Rule 15 depositions in the Lemissoler matter, the government recognized the lack of merit to its case and voluntarily dismissed the case purportedly "in the interests of justice." *United States v. Lemissoler Shipmanagement*, 1:10-mj-86-JHR, Doc. 21 (June 20, 2010). Based upon the information known to date, a similar result would be well-advised and welcomed here.

WHEREFORE, for the reasons set forth above, Movants respectfully request that the Court enter an order denying the government's motion and directing the government to serve complete responses by electronic means to Movants requests for disclosures no later than 12:00 noon, Monday, September 4th, 2017 (*i.e.* - seven (7) days prior to the upcoming depositions), and such other and further relief as may be just and equitable.

---

[9] *United States v. Petraia Maritime, Ltd*., 06-cr-91-P-S; *United States v. Lemissoler Shipmanagement*, 1:10-mj-86-JHR (2010); *United States v. MST, et al*., 2:17-cr-117-NT, (2017).

Dated: Portland, Maine
    September 1, 2017                      CHALOS & Co, P.C.

                                          /s/ George M. Chalos
                                          George M. Chalos
                                          *Pro Hac Vice*
                                          55 Hamilton Avenue
                                          Oyster Bay, New York 11771
                                          Telephone:    (516) 714-4300
                                          Facsimile:     (516) 750-9051
                                          Email:           gmc@chaloslaw.com

                                          *Lead Trial Counsel for Defendants*


                                          -and-

                                          /s/ Peter E. Rodway
                                          Peter E. Rodway
                                          RODWAY & HORODYSKI
                                          P.O. BOX 874
                                          PORTLAND, ME 04104
                                          207-773-8449
                                          Email: rodlaw@maine.rr.com

                                          *Local Counsel for Defendants*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on September 1, 2017, I arranged for a copy of the foregoing to be served via ECF on counsel for the United States of America:

                                        /s/ George M. Chalos
                                        George M. Chalos